**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Dwayne Simmons, )<br>)<br>　　　　Plaintiff, )<br>)<br>　v. )<br>)<br>Charleston County, )<br>)<br>　　　　Defendant. )<br>_____) | Civil Action No. 2:18-03191-RMG<br><br>**ORDER AND OPINION** |

Before the Court is the Report and Recommendation ("R & R") of the Magistrate Judge (Dkt. No. 31) recommending the Court grant Defendant's motion for summary judgment (Dkt. No. 24). For the reasons set forth below, the Court adopts the R & R as the order of the Court and grants Defendant's motion.

**I.     Background**

Plaintiff Dwayne Simmons filed this civil action against his former employer, Defendant Charleston County, alleging race discrimination and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). On November 12, 2019, Defendant filed a motion for summary judgment. (Dkt. No. 24). On July 30, 2020, the Magistrate Judge issued an R & R recommending that the Court grant Defendant's motion. (Dkt. No. 31). Plaintiff then filed timely objections to the R & R, (Dkt. No. 32), to which Defendant filed a reply, (Dkt. No. 33).

**II.     Legal Standard**

　　**a.     Report and Recommendation**

The Magistrate Judge makes only a recommendation to this Court that has no presumptive weight. The responsibility to make a final determination remains with the Court. *See Mathews v.*

*Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636 (b)(1). This Court must make a *de novo* determination of those portions of the R & R Plaintiff specifically objects to. Fed. R. Civ. P. 72 (b)(2). Where Plaintiff fails to file any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). (internal quotation omitted). "Moreover, in the absence of specific objections to the R & R, the Court need not give any explanation for adopting the recommendation." *Wilson v. S.C. Dept of Corr.*, No. 9:14-cv-4365-RMG, 2015 WL 1124701, at *1 (D.S.C. Mar. 12, 2015). Plaintiff filed objections and the R & R is reviewed *de novo*.

      b. **Motion for Summary Judgment**

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court interprets all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the moving party has met its burden, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Rule 56(e)); *Lilly v. Crum*, No. 2:19-CV-00189, 2020 WL 1879469, at *4 (S.D.W. Va. Apr. 15, 2020) (noting that the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to create a genuine dispute) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### III.    Discussion

Plaintiff, who is African American, was a longtime employee of Charleston County, serving in the Charleston County Emergency Medical Services Department ("CCEMS"). The CCEMS provides 24-hour emergency medical services to country residents. Plaintiff performed duties as an emergency medical technician ("EMT") and was, for a period of time relevant to this case, in a supervisory position as a division chief of one of the three regional areas in the county known as Delta 2. The director of CCEMS was David Abrams.

Division chiefs, such as Plaintiff, typically worked 12-hour shifts, with the day shift beginning at 6:45 a.m. The day shift division chief relieves the night shift division chief. The record establishes that in September 2017 another division chief in Delta 2, Charlene Holbird, who is Caucasian, complained to Abrams that Plaintiff was signing in remotely to the County's timekeeper system, indicating that he was present on or before 6:45 a.m. when in fact he arrived at a later time to relieve her. Abrams initiated and took personal charge of the ensuing investigation, recognizing that falsifying arrival times on the County timekeeper system was a potentially terminable offense.

Abrams' investigation included interviewing other co-workers of Plaintiff, verifying entries in the timekeeper system were made from Plaintiff's MIFI card[1], and confirming through review of CCEMS records and audio tapes instances where night shift division staff were required to take calls after 6:45 a.m. because Plaintiff was not present despite the fact that he had signed in on duty on the timekeeper system. After finding multiple instances of such conduct, Abrams

---

[1] Plaintiff's supervisors had earlier directed that all MIFI cards be turned in to be dispatched by staff as they went on duty. Plaintiff failed initially to turn in his MIFI card as directed and was utilizing it to remotely make false entries into the County timekeeper system. (Dkt No. 24-27 at 11).

2

concluded that the evidence was "irrefutable" and "overwhelming" that Plaintiff was making false entries in the County's timekeeper system regarding his arrival time. (Dkt. No. 24-27 at 11).

Having concluded that Plaintiff was intentionally falsifying arrival times on multiple occasions over an extended period, Abrams was faced with the decision of what employment action was appropriate. Initially, Abrams favored termination but, after receiving the advice of the County's Human Resource Department and considering Plaintiff's long service to the Department, he opted to demote Plaintiff out of his position as division chief and placed him back into a crew chief position. Abrams explained that he decided to impose "the least amount of discipline that I thought would both address the infraction, maintain the integrity of our leadership, and remove him from a position where he was in leadership role of people looking up to him knowing what had occurred." (*Id.* at 11-12).

While Plaintiff complains about the source of the original complaint against him, fellow division chief Holbird, and the failure of Abrams to include in the review intervening supervisory staff, which included both an African American and a Caucasian, there is nothing about Abrams' investigation or its conclusions that reflect any sort of intentional racial discrimination or racial animus. Indeed, the record evidence is overwhelming that Plaintiff engaged in a persistent practice of falsifying arrival times, a serious matter for any employee but certainly for a supervisor. Abrams' actions here were measured and reflected a fair and unbiased response to serious misconduct of an otherwise able employee. Plaintiff acknowledged his high regard for Abrams, noting that he had the "deepest respect" for his chief. (Dkt. No. 24-27 at 80).

As the Magistrate Judge's thorough R & R explains, a claimant in a Title VII action must initially show that (1) he is a member of a protected class; (2) he was performing his job in a satisfactory manner; (3) he was subject to an adverse employment action; and (4) the alleged

2

adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination. *McDonald Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995). After carefully addressing the issues raised by the parties and properly weighing the evidence in a light most favorable to Plaintiff, the non-moving party, the Magistrate Judge concluded that Plaintiff could not establish two of the requirements to establish a *prima facie* case under Title VII: that he was satisfactorily performing his job duties and that the employment action taken raised a reasonable inference of discrimination. (Dkt. No. 31 at 13-23).

The R & R addressed in considerable detail Plaintiff's claim that he was more harshly sanctioned for his misconduct than Caucasian employees. Each of the identified instances of alleged differential treatment was unrelated to the misconduct at issue here, the intentional falsification of time records, and the Magistrate Judge correctly concluded these other disciplinary actions were not appropriate comparators. She also found that the disciplinary action taken against Plaintiff was far less serious than County policy allowed. (*Id*. at 19-23). The Magistrate Judge further found, even assuming that Plaintiff could establish a *prima facie* case, that the Defendant provided legitimate, non-discriminatory reasons for its actions and Plaintiff could not show such reasons were pretext for discrimination, as required under *McDonald Douglas*. (*Id.* at 23-27).

Plaintiff's objections to the R & R are simply a rehash of the very arguments presented to the Magistrate Judge, rearguing issues thoroughly addressed in the R & R. (Dkt. No. 32 at 6-13). The bottom line is that nothing raised in Plaintiff's objections to the R & R in any way brings into substantial question the finding by Abrams that Plaintiff intentionally falsified time records or committed a potential terminable offense. Nor does any objection in the R & R bring into substantial question the Magistrate Judge's finding that the received employment action did not even remotely suggest intentional racial discrimination or animus. For these reasons, the Court

2

adopts the R & R's findings of fact and conclusions of law regarding alleged Title VII violations by Defendant.

Plaintiff also objects to the Magistrate Judge's findings and conclusions regarding the presence of an alleged hostile work environment, which he claims led to his early retirement. To establish the presence of a racially hostile work environment actionable under Title VII, the employee must show that the workplace was "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive work environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). This requires a showing of (1) unwelcome conduct; (2) based on the victim's race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment or to create an abusive work environment; and (4) which is imputable to the employer. *Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). The plaintiff is further required to establish that the challenged conduct is "objectively and subjectively offensive, one that a reasonable person would find hostile or abusive." *Faragher v. City of Baton Rouge*, 524 U.S. 775, 787 (1998).

Plaintiffs' claims of a hostile work environment arise out of his ongoing disagreements and conflicts with Holbird, his former division chief colleague, who the record suggests was no fan of the Plaintiff. After his demotion, Plaintiff complains about certain specific actions of Holbird, including a Facebook post that he believed inferentially referred to him, a report to his supervisor when he was late for work, and comments to his supervisor and other co-workers that Plaintiff perceived as reflecting poorly on him.

The Magistrate Judge found that Plaintiff's complaints about Holbird, taken in a light most favorable to him, simply did not rise to the level of pervasive and hostile work environment to be

2

actionable under Title VII. The Court finds instructive that Plaintiff initially found it difficult in his deposition to identify any specific actions by Holbird that he could identify as racially hostile. (Dkt No. 24-7 at 24). When pressed by defense counsel to describe anything to support his claims of a hostile work environment, he then identified the Facebook post, complaints Holbird made to his supervisor, and negative comments by Holbird to his co-workers. (*Id.* at 25-30). Plaintiff complained to a supervisor that "he wasn't happy with [Holbird] talking about him," which is as far as he went to alerting his employer to the allegedly hostile work environment created by Holbird. (Dkt. No. 24-41 at 3). Further, upon his demotion, Plaintiff requested he remain in the same zone as Holbird, Delta 2, and the record shows no evidence he ever asked to be assigned to another zone.

The Court finds that the Magistrate Judge's conclusion that there is not an objectively reasonable basis to conclude that Plaintiff's work environment was so pervasively hostile that it altered his conditions of employment is well supported by the record. There is little doubt that Holbird had little use for Plaintiff and vice versa, but this type of co-worker conflict does not remotely reach the legal standard to be actionable under Title VII. Consequently, the Court adopts the remaining potion of the R & R regarding the alleged hostile work environment. (Dkt. No. 31 at 27-30).

### IV. Conclusion

For the foregoing reasons, the Court **ADOPTS** the R & R of the Magistrate Judge (Dkt. No. 31) as the order of the Court and **GRANTS** Defendant's motion for summary judgment (Dkt. No. 24).

**AND IT IS SO ORDERED.**

                                              /s/Richard Mark Gergel
                                              Richard Mark Gergel
                                              United States District Court Judge

August 31, 2020
Charleston, South Carolina